**UNITED STATES of America,**
**Plaintiff(s)**

v.

**Julio LAGUNA ESTELA, Defendant(s).**

**Criminal No. 02–81 (JAG).**

United States District Court,
D. Puerto Rico.

March 16, 2004.

Hector E. Guzman–Silva, Federal Public Defender's Office, Juan F. Matos–De–Juan, Federal Public Defender's Office, Hato Rey, PR, for Defendants.

Antonio R. Bazan–Gonzalez, United States Attorney's Office, Torre Chardon, Pretrial Services, U.S. Marshal, U.S. Probation, U.S. Probation Office, San Juan, PR, for Plaintiff.

## OPINION AND ORDER

GARCIA–GREGORY, District Judge.

On July 17, 2003, defendant Julio Laguna Estela ("Laguna") moved to dismiss the indictment against him alleging that the United States' (the "Government") prosecution in this case violates the double jeopardy clause of the United States' Constitution (Docket No. 299). On July 30, 2003, the Government opposed (Docket No. 310). On August 12, 2003, the Court referred Laguna's motion to Magistrate–Judge Gustavo A. Gelpi for a Report and Recommendation (Docket No. 321). On October 1, 2003, Magistrate–Judge Gelpi recommended that the Court deny Laguna's motion because the facts which led to his previous conviction in the Middle District of Florida under 21 U.S.C. § 846 are sufficiently distinct from those in this case so that the current prosecution does not violate the double jeopardy clause (Docket No. 357). On October 10, 2003, Laguna objected the Report and Recommendation, mainly arguing that he had not been afforded an evidentiary hearing in which to rebut the Government's evidence (Docket No. 360). On December 1, 2003, the Court held a hearing where the Government presented the testimony of a government agent and cooperating co-defendant Jesus Tocuyo Gonzalez ("Tocuyo") (Docket Nos. 390, 406). On January 7, 2004, the Court heard testimony from the defendant (Docket No. 401, 407). The parties having submitted supplemental briefs, and for the

reasons discussed below, the Court **ADOPTS** the Magistrate–Judge's Report and Recommendation and, accordingly, **DENIES** Laguna's motion to dismiss the indictment.

## DISCUSSION

A. *Standard for Reviewing a Magistrate–Judge's Report and Recommendation*

■ A District Court may, on its own motion, refer a pending motion to a U.S. Magistrate–Judge for a Report and Recommendation. *See* 28 U.S.C. § 636(b)(1)(B); Fed.R.Civ.P. 72(b); Local Rule 503. Pursuant to Fed.R.Civ.P. 72(b) and Local Rule 510.2, the adversely affected party may contest the Magistrate–Judge's Report and Recommendation by filing written objections "[w]ithin ten days of being served" with a copy of the order. *See* 28 U.S.C. § 636(b)(1). If the adversely affected party files timely objections to the Magistrate–Judge's Report and Recommendation, the Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which specific objection is made. *See United States v. Raddatz,* 447 U.S. 667, 673, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980); *Lopez v. Chater,* 8 F.Supp.2d 152, 154 (D.P.R.1998).

B. *Laguna's objections to the Report and Recommendation*

■ In determining whether two charged conspiracies that allege violations of the same substantive statute are actually the same offense for double jeopardy purposes, we consider five factors: (a) the time during which the activities occurred; (b) the persons involved; (c) the places involved; (d) whether the same evidence was used to prove the two conspiracies; and (e) whether the same statutory provision was involved in both conspiracies.

*United States v. Gomez–Pabon,* 911 F.2d 847, 860 (1st Cir.1990). "A defendant claiming double jeopardy has the burden of presenting evidence to establish a *prima facie* nonfrivolous double jeopardy claim. Once such a claim is established, the burden shifts to the government to prove by a preponderance of the evidence that the indictments charge separate offenses." *U.S. v. Booth,* 673 F.2d 27, 30–1 (1st Cir.1982) (*citing United States v. Futch,* 637 F.2d 386, 389 (5th Cir.1981)).

Laguna seeks dismissal of the indictment against him arguing that he has already been convicted, following a plea of guilty, in the Middle District of Florida for the conspiracy charged in this case. The Magistrate–Judge, however, determined that the conspiracies charged in both indictments were, in fact, two different conspiracies and not a continuous one, as Laguna contends. The Magistrate–Judge found that, although there is an overlap in time of approximately two and a half months between them and both indictments do involve the same statute, the conspiracies did not involve the same persons, amounts of controlled substances, or locations. Moreover, he found that the Government is not relying here on the same evidence it used in Florida.

Laguna objected to the Magistrate–Judge's recommendation by alleging a violation of his Sixth Amendment rights "to be confronted with the witnesses against him. . . ." U.S. Const. Am. VI. Mainly, he claimed that he had not been given an opportunity to examine the Drug Enforcement Agency ("DEA") reports the Magistrate–Judge reviewed in making his recommendation. He further argued the he had not been given the opportunity to present evidence in his favor and adamantly requested an evidentiary hearing on his double jeopardy claim.

■ In order to afford Laguna with every opportunity to present his defense, the Court granted his request for an evidentiary hearing and allowed his counsel to review the DEA reports. After a thorough examination of the evidence on record, the Court finds that Laguna has failed to establish a *prima facie* nonfrivolous double jeopardy claim and that, even assuming *arguendo* that he has, the Government has successfully met its burden of proving by a preponderance of the evidence that the indictments charge separate offenses. *See Booth,* 673 F.2d at 30–1.

### 1. *The time during which the activities occurred*

The Florida indictment charges a conspiracy which ended on or about November 12, 1998, while the present indictment charges a conspiracy commencing on or about September 1998. Although Laguna contends that these two conspiracies are in fact one ongoing enterprise to move drugs from Florida for distribution in Puerto Rico, the evidence suggests otherwise.

Tocuyo testified to having been introduced to Laguna in September 1998 by Rafael Ramirez ("Ramirez") and Jose Irizarry ("Irizarry"), the main conspirators in Florida. They, however, did not conduct any drug transactions until December 1998; that is, *after* the Florida conspiracy came to an end by the arrests of Ramirez and Irizarry. More precisely, the indictment reflects that telephone calls from Laguna to Tocuyo were first intercepted on December 4, 1998.

Laguna argues that he received the heroin he gave Tocuyo from Ramirez in Florida. That after Ramirez was arrested on November 12, 1998, he called Laguna and put him in contact with an unknown individual who he had left in charge of his operations. Laguna claims that he conducted several drug transactions with this individual and that Ramirez was giving the

orders from within the jail. Laguna could not, however, identify the individual; he could not provide a name or description of the man he bought drugs from on several occasions. Thus, the Court cannot give any credibility to Laguna's testimony.

Furthermore, if his story were credible, Laguna's statements would tend to demonstrate that the Florida conspiracy did not end on November 12, 1998. It would not necessarily imply, however, that the conspiracy charged here is a part of a continuing conspiracy in Florida.

### 2. *The persons involved*

The only name appearing in both indictments is that of Laguna. Tocuyo testified to recognizing the names of Ramirez, Irizarry, and Sarahi Figueroa, Irizarry's wife, but did not know any of the twenty-five other persons indicted in the Florida conspiracy. The fact that Tocuyo, a leader in this conspiracy, did not know the majority of the Florida conspirators strongly suggests that these were in fact two separate and distinct criminal enterprises. The lone appearance of Laguna in both conspiracies is insufficient to establish his claim.

### 3. *The places involved*

The Florida indictment involves a conspiracy to distribute heroin in Orange and Osceola Counties in Florida. The present indictment charges a conspiracy to distribute heroin *and* cocaine within the District of Puerto Rico. Therefore, the places involved do not coincide.

### 4. *Whether the same evidence was used to prove the two conspiracies*

In this case, the Government's evidence consists of recorded telephone conversations obtained through a Title III wiretap placed on Tocuyo's telephone. None of the recordings even mention the Florida

**24**

conspirators, except for Laguna. Although the Court is at this time unaware of the evidence in possession of the U.S. Attorney for the Middle District of Florida relating to the Florida conspiracy, it is not convinced that such evidence would even be helpful to the present prosecution. Therefore, the Court cannot find that the same evidence is being used to prove both conspiracies.

5. *Whether the same statutory provision was involved in both conspiracies*

The statutory provisions are the same in both conspiracies, 21 U.S.C. §§ 841(a)(1) & 846.

Therefore, with only the statutory provisions and the name of Laguna appearing in both indictments and a two month overlap, Laguna has failed to establish that he has a *prima facie* nonfrivolous double jeopardy claim.

## CONCLUSION

For the foregoing reasons, the Court **ADOPTS** the Magistrate–Judge's Report and Recommendation and **DENIES** Laguna's motion to dismiss the indictment (Docket No. 299).

IT IS SO ORDERED.